OPINION OF THE COURT
Lewis L. Douglass, J.
The present action in medical malpractice was commenced by service of summons and complaint dated June 20,1977. The complaint alleges that defendants Dr. Mario Gonzalez, Dr. Richard Caíame, and Brooklyn Hospital were negligent in treating plaintiff Elizabeth M. Scott for cancer. Mrs. Scott is suing the defendants for injuries sustained as a result of the alleged negligence, and Mr. Scott is suing for loss of services and consortium of his wife and the expenses incurred in attempting to cure her injuries.
In the motion presently before this court, the defendants move for an order, pursuant to CPLR 3212, granting summary judgment on their behalf. In support of the motion, the defendants direct the court’s attention to section 920 of the Restatement of Torts, 2d, for the proposition that “where a defendant confers upon a plaintiff a benefit by virtue of his (the defendant’s) own negligence, then the plaintiff’s recoverable damages are to be reduced by the value of that benefit.” In application of this proposition, the defendant argues that, as a matter of law, the injuries complained of by the plaintiffs are completely outweighed by the benefit of the life-saving results of the treatment.
*766 The cancer for which Mrs. Scott received treatment is stage III carcinoma of the endometrium. The defendants treated her with radium therapy, followed by a hysterectomy and cobalt radiation therapy. The defendants argue that the treatment was successful in arresting the cancer in that Mrs. Scott is alive today, nine years after treatment.
It is basic tort law that a validly stated cause of action in negligence requires the following elements:
(1) A duty owed from defendant to plaintiff;
(2) a breach of the duty owed from defendant to plaintiff;
(3) injury sustained by plaintiff as a proximate cause of the above-named breach.
Assuming, only for the purposes of this motion, the plaintiffs’ allegations of negligence to be true, the defendants argue that the gift of life outweighs the injuries sustained by plaintiff. Therefore, the defendant argues, since, as a matter of law, the plaintiff sustained no injury greater than the benefit conferred upon her, the plaintiffs have failed to state a valid cause of action.
There is a valid basis for the defendants’ argument. Their point is that they did a socially desirable act in saving Mrs. Scott’s life and that the law should recognize and encourage such behavior. The defendants argue that personal injury less than death is to be preferred to death. In other words, whereas plaintiff would have died without the treatment, she is now alive with injuries, and life with injuries is preferred over no life at all.
Certainly, this court agrees that life is preferred over death. However, the issue before this court is not so broad.
The plaintiffs claim that the application of the treatment was negligent. The amended bill of particulars states the following:
“4. The initial radium implant was done by dr. mario González and dr. richard calame, the defendants herein. The cobalt treatment was done by dr. mario González. Both of the aforesaid treatments were done with the assistance of employees of Brooklyn hospital, both male and *767 female, wearing white medical coats, and the names of the parties are not within the knowledge of the plaintiff herein.
* * *
“6. The defendants failed to warn or advise the plaintiff of the side effects and hazards of the prospective treatment; failed to administer the proper dosage of radium and cobalt; failed to apply it properly in that it resulted in excessive injuries and side effects set forth herein.
“7. It is plain that the insertion and radiation and cobalt treatment was applied with defective equipment and that the resultant injuries set forth herein were caused by the improper equipment, the exact extent of which is within the knowledge of the defendants herein.
* * *
“11. (a) Burns subsequent to treatment on upper legs, excessive heavy vaginal discharge with itching and burning sensation, opened abscess, sloughing off of the bladder lining resulting in shrunken bladder, all resulting in a shrinking of the vaginal opening and rectum and other related and adjacent areas, resulting in continuous and intermittent bleeding and terminating all possibilities for sexual intercourse.”
Also, in a further amendment of the bill of particulars, the plaintiffs state the following:
“Paragraph 6 — The defendants failed to warn or advise the plaintiff of the side effects or hazards of prospective treatment; failed to provide any midline shielding of the bladder or rectum and generally failed to treat properly in that it resulted in excessive injuries and side effects set forth herein.”
In opposition to the motion for summary judgment on behalf of the defendants, the plaintiffs argue two points. First, it is claimed that there is an issue of fact which remains for the trier of facts to decide. Second, plaintiffs disagree with the defendants’ application of section 920 of the Restatement of Torts, 2d.
Plaintiffs claim that the defendants’ argument is erroneous in that it assumes that Mrs. Scott would have died from the stage III carcinoma and that the treatment is, indeed, *768 responsible for the arrest of the cancer. Both sides argue this point with medical support on each side, but the seriousness of a stage III carcinoma does not seem to be such a substantial issue of fact as to warrant a trial. In any event, plaintiffs’ second point demands greater attention.
Plaintiffs argue that, even if defendants’ treatment did, indeed, save Mrs. Scott’s life, section 920 of the Restatement of Torts, 2d, should not be applied in the manner presented by defendants. Plaintiffs note that the Restatement addresses cases where defendant’s negligence confers a benefit on plaintiff. Therefore, in a case where a negligent act confers both a benefit and an injury on plaintiff, the benefit may diminish the injury. But, plaintiffs argue, this is not the circumstance in the present case. The defendants’ negligence did not confer a benefit on the plaintiff. The treatment saved her life. On the other hand, the negligent application of the treatment caused the injuries complained of in this action. In other words, Mrs. Scott could have gone to another doctor and another hospital where this same life-saving treatment could have been administered without negligence and without any of the resulting injuries complained of in this instance.
In support of the motion for summary judgment, the defendants cite several cases that involve an alleged cause of action for “wrongful life” or “wrongful birth”. Such cause of action is based on the notion that a person who has been born with genetic defects may sue on the basis that the doctor was negligent in not informing the parents of the possibility of the resulting defects and that, had the parents been presented with such information, they would have chosen to abort the fetus. The courts have consistently refused to recognize such a cause of action stating that life in any form is preferable to death (Becker v Schwartz, 46 NY2d 401; Stewart v Long Is. Coll. Hosp., 35 AD2d 531, affd 30 NY2d 695).
Clearly, those cases can be distinguished from the present case. In those cases, there was no recognized cause of action for “wrongful life” or “wrongful birth”. In the present case, there'is a recognized cause of action for negligent application of treatment. It is well established that, in treating a patient, a physician must exercise the level of *769 skill, care, and diligence commonly and ordinarily possessed and required of physicians in the same locality or field of medicine (Calhoun v Gale, 29 AD2d 766, affd 23 NY2d 756; Kinsley v Carravetta, 244 App Div 213, affd 273 NY 559; Dembicer v Rosenthal, 53 Misc 2d 777, affd 20 AD2d 758). Also, hospitals, whether charitable or profit-making, are liable to patients for injuries sustained through negligence of hospital employees acting within their scope of employment (Bing v Thunig, 2 NY2d 656; Reeder v City of New York, 197 NYS2d 572).
Another distinguishing factor is the different analytical scheme-work involved in each case. In a case of “wrongful life” or “wrongful birth”, there are only two possibilities for a court to consider. The plaintiff would either have an impaired life or no life at all. In the present case, there was a third possibility. Mrs. Scott could have gone through treatment and enjoyed a life without the impairments caused by the defendants’ negligence. The presence of this third possibility is the basis of this lawsuit. Since this possibility is not present in a cause of action for “wrongful life” or “wrongful birth”, the cases cited by defendants are not determinative in this case.
At this point, it should be noted that this is not a case of “bad results” or an unexpected reaction to treatment. It is well established that a physician is not responsible for unexpected “bad results” or for a mere error in judgment (Bullock v Parkchester Gen. Hosp., 3 AD2d 254, affd 4 NY2d 894; Whitree v State of New York, 56 Misc 2d 693; Simon v Freidrich, 163 Misc 112). On the contrary, the defendants concede, for the purpose of this motion only, that they acted negligently in applying the treatment.
The issue presented by this case is the determination of a standard of care that a physician is required to exercise in saving a patient’s life and whether negligence can be justified under such a situation. It should be noted that neither counsel nor the court have discovered any case law on point with defendants’ argument, but there are certain situations that are sufficiently similar to the present circumstances as to be of guidance to the court.
In cases of emergency, a physician is required to act as the emergency warrants (Parker v State of New York, 280 *770 App Div 157, rearg and app den 280 App Div 901). In Parker v State (supra), the patient was brought to the physician in a state of shock after having suffered a cerebral concussion. The physician administered a transfusion of pooled blood plasma which involved a risk of transmitting a virus infection. The court held that the emergency justified the use of pooled blood plasma and that the transfusion was not an improper exercise of professional judgment. In other words, the doctor acted as a reasonable doctor may have under those circumstances.
Clearly, there is a reasonableness standard of care to be exercised by physicians even when saving a life. In recognition of such a standard, the court in Matter of Nemser (51 Misc 2d 616, 622), stated the following: “Certainly, if medical procedures are of an emergency nature or are required to save the life of a human being, neither a physician nor a hospital should be deterred from the exercise of sound medical judgment with respect to necessary treatment merely by threat of possible legal action.”
These cases indicate that, in saving a life, a physician has a duty to act as a reasonable physician would under the circumstances. In the present case, the argument that Mrs. Scott is still alive and, therefore, has not sustained injury within the law is not persuasive to this court. The fact remains that the defendants admit, by conceding that they applied treatment negligently, that they did not act as a reasonable physician would have under the circumstances. A reasonable physician acting without negligence would have saved Mrs. Scott’s life without causing the alleged unnecessary injuries complained of in this case.
Also, it cannot be argued that the recognized preference for life over death denies plaintiffs a cause of action for the injuries caused by defendants’ negligent application of the treatment. Just as life is preferred over death, an unimpaired life is preferred over an impaired one. A physician has a duty to act in such a way as to minimize injury to the patient, even when saving that patient’s life. A breach of that duty which results in unnecessary injury to the patient is negligence and constitutes a valid cause of action in medical malpractice.
Therefore, defendants’ motion for summary judgment is denied.